UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAQUAN LAYNE, | **MEMORANDUM OPINION AND ORDER** |
| Plaintiff, | |
| -against- | 19-CV-04531 (PMH) |
| MARIO PANZARELLA, et al., | |
| Defendants. | |

PHILIP M. HALPERN, United States District Judge:

Jaquan Layne ("Plaintiff"), presently incarcerated at Sing Sing Correctional Facility ("Sing Sing") and proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against the following New York State Department of Corrections and Community Supervision ("DOCCS") employees: (1) Lieutenant Mario Panzarella ("Panzarella"); (2) Sergeant Todd Paroline ("Paroline"); (3) Sergeant Juan Irizarry ("Irizarry"); (4) Correction Officer Pasko Delovic ("Delovic"); (5) Correction Officer Jason Ayala ("Ayala," and with Panzarella, Paroline, Irizarry, and Delovic, the "Officer Defendants"); and (6) Nurse Avwurhi Akarumeh ("Akarumeh," and collectively with the Officer Defendants, "Defendants"). (Doc. 2, "Compl.").[1] Plaintiff raises claims that: (1) the Officer Defendants: (i) conducted an unreasonable search of him, in violation of the Fourth Amendment; (ii) sexually abused him, in violation of the Eighth Amendment; (iii) engaged in—or failed to intervene in the use of—excessive force, in violation of the Eighth Amendment; and (2) Akarumeh was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. (*See generally id*.).

Plaintiff commenced this action on May 15, 2019. (*Id*.). Judge Briccetti, before whom this case proceeded prior to reassignment to this Court on March 17, 2020, dismissed Plaintiff's claims

---

[1] Citations to the Complaint correspond to the pagination generated by ECF.

against DOCCS on Eleventh Amendment grounds on May 19, 2019. (Doc. 6 at 2-3). Defendants answered the Complaint on September 6, 2019. (Doc. 16).   Discovery was completed on November 11, 2021. (Doc. 76). Defendants filed their motion for partial summary judgment, in accordance with a briefing schedule set by the Court, on January 19, 2022. (Doc. 86; Doc. 87; Doc. 88; Doc. 89; Doc. 90; "Def. 56.1"; Doc. 91; Doc. 92, "Def. Br."). Defendants seek summary judgment on Plaintiff's: (i) Fourth Amendment unreasonable search claim against the Officer Defendants; (ii) Eighth Amendment sexual abuse claim against the Officer Defendants; and (iii) Eighth Amendment deliberate indifference claim against Akarumeh.

Plaintiff filed "objections" to Defendants' motion on February 11, 2022, which the Court construes as his opposition. (Doc. 94, "Opp. Br."). Plaintiff did not file a Rule 56.1 Counterstatement and Defendants, on that basis, seek to have all facts presented in their 56.1 Statement deemed admitted. (Def. Br. at 2 n.1). The Court, however, in exercising its discretion, considers the content of Plaintiff's opposition brief as his responses to Defendants' Local Civil Rule 56.1 Statement.[2] The Court, however, only considers those responses that are supported by admissible record evidence to controvert the factual statements set forth in Defendants' 56.1 Statement. Statements made by Defendants that are supported by admissible evidence and not refuted by Plaintiff are deemed admitted. *See Mirza v. Garnet Health*, No. 20-CV-00556, 2022 WL 826410, at *2 n.6 (S.D.N.Y. Mar. 17, 2022) ("[S]tatements in the 56.1 Counterstatement

---

[2] *See Vasquez v. Yadali*, No. 16-CV-00895, 2022 WL 1597693, at *2 n.6 (S.D.N.Y. May 19, 2022) (considering the substance of the plaintiff's arguments in various filings as responses to the defendants' Rule 56.1 statement even when the plaintiff did not submit a statement of his own); *Casanova v. Maldonado*, No. 17-CV-01466, 2021 WL 3621686, at *2 n.4 (S.D.N.Y. Aug. 16, 2021) (same, noting that "[w]hile *pro se* litigants are . . .  not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 Statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (quoting *Wiggins v. Griffin*, No. 18-CV-07559, 2021 WL 706720, at *1 n.1 (S.D.N.Y. Feb. 22, 2021) (alterations in original))).

supported by admissible evidence and not refuted with citation to admissible evidence provided to the Court are deemed admitted.").[3]

Defendants' motion for partial summary judgment was fully submitted upon the filing of their reply brief on March 18, 2022. (Doc. 101, "Reply"). For the reasons set forth below, Defendants' motion is GRANTED IN PART.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion and draws them from: (1) the Complaint; (2) Defendants' Rule 56.1 Statement; (3) Plaintiff's opposition; (4) the Declaration of Brendan M. Horan along with the exhibits annexed thereto (Doc. 89, "Horan Decl."), which includes a transcript of Plaintiff's deposition, conducted on February 4, 2020 (Doc. 89-1, "Pltf. Dep.") and a transcript of a DOCCS disciplinary hearing held for Plaintiff on January 19, 2019 (Doc. 89-2, "Disc. Hr'g"); (5) the Declaration of Pasko Delovic (Doc. 87, "Delovic Decl."); and (6) the Declaration of Avwureh Akarumeh (Doc. 88, "Akarumeh Decl.").

Plaintiff's claims arise from a search conducted on January 19, 2019, and the medical treatment provided to him thereafter. (Compl. at 2-3). Plaintiff, at all relevant times, was a convicted prisoner at Sing Sing. (Def. 56.1 at 2). Defendants were, at all relevant times, DOCCS employees holding the positions listed *supra*. (Compl. at 1-2.).

---

[3] *See also Wilson v. Annucci*, No. 18-CV-00391, 2020 WL 1979210, at *3 (N.D.N.Y. Apr. 23, 2020) (noting that *pro se* plaintiffs opposing a motion for summary judgment were "required to submit admissible evidence"), *adopted by* 2020 WL 5229375 (N.D.N.Y. Sept. 2, 2020); Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

I.  <u>The Search</u>

The subject search began when, on January 19, 2019, Irizarry and Delovic stopped and frisked Plaintiff while Plaintiff was walking from his cell to the prison yard. (Def. 56.1 at 2; Pltf. Dep. at 39). Delovic maintains that he and Irizarry observed Plaintiff "acting nervously and speaking quickly." (Delovic Decl. at ¶ 5-6). The initial pat and frisk did not uncover any contraband, but Delovic smelled marijuana on Plaintiff's person. (Def. 56.1 at 2). Irizarry, Delovic, and one other, unnamed officer then escorted Plaintiff to a nearby shower area, where he was strip searched by Delovic and the unnamed officer, while Irizarry waited outside.[4] (*Id*.; Pltf. Dep. at 43-45). The strip search did not uncover any contraband, but Delovic still smelled marijuana on Plaintiff's person. (Def. 56.1 at 2). Irizarry, Delovic, Ayala, and Panzarella then escorted Plaintiff to the "disciplinary area" of the prison where they met Paroline. (*Id*.; Pltf. Dep. at 51). The disciplinary area is a small private room, roughly the size of two individual cells, and is located approximately five to ten minutes by foot from the shower where Plaintiff was strip searched. (Pltf. Dep. at 49-51).

Plaintiff insists that, at the disciplinary area, Panzarella sprayed him with mace and the Officer Defendants tackled him to the ground and kicked him. (Pltf. Dep. at 53). Plaintiff states that Panzarella then stated, "[I]f you don't give it to us, we gonna get it," and Delovic said, "I'm going to get it." (*Id*.). Plaintiff states that Delovic then pulled down Plaintiff's boxers, spread his buttocks, and announced "he boofed it" before sticking his finger into Plaintiff's rectum. (*Id*. at 62-63).[5] Plaintiff states that Delovic "kept doing that for a second" before Plaintiff passed out. (*Id*. at 64, 66).

---

[4] The Second Circuit has defined a strip search to be a search where, as here, there is "an inspection of a naked individual, without any scrutiny of the subject's body cavities." *Harris v. Miller*, 818 F.3d 49, 58 (2d Cir. 2016).

[5] According to Plaintiff, to "boof" something means to insert it into one's rectum. (Pltf. Dep. at 64:9-65:25).

Defendants claim that "Delovic recovered drugs that had been hidden on Plaintiff's person." (Def. Br. at 4 (citing Delovic Decl. at ¶¶ 10-12; Def. 56.1 at ¶¶ 26-27)). Delovic avers that, in the disciplinary area prior to conducting the anal cavity search, he "recovered two bundles of a green leafy substance, which Plaintiff had been concealing in his groin area." (Delovic Decl. at ¶ 10). Defendants also state that Plaintiff "acknowledged that the officers recovered marijuana from his person at the time of the incident." (Def. 56.1 at 4 (citing Disc. Hr'g at 4, 10)). The presence of drugs, however, is disputed by Plaintiff. (Opp. Br. at 2; Pltf. Dep. at 63). Plaintiff maintains that Defendants did not find any contraband at any point on January 19, 2019, and that he does not use drugs at all. (Pltf. Dep. at 63, 138). Plaintiff also argues, as to his disciplinary hearing, that he appealed the drug charge and that it was dismissed because he never possessed drugs. (Opp. Br. at 3). Plaintiff attaches the appeal paperwork to his opposition brief, which does show dismissal of the charge but does not provide the reason for dismissal. (Opp. Br. at 24). Defendants, for whatever reason, do not address this critical dispute in their reply papers. (*See generally* Reply).

II.   <u>Post-Search Medical Care</u>

Plaintiff represents that, after passing out during the Officer Defendants' cavity search, he regained consciousness as he was being "dragged" by his arms to Sing Sing's medical clinic ("Clinic"). (Pltf. Dep. at 66, 68).

Akarumeh received Plaintiff at the Clinic and subsequently washed his face and took his vital signs, all of which were normal. (Def. 56.1 at 3; Akarumeh Decl. at 2). Akarumeh states that "Plaintiff denied any injuries" during their interaction and that she did not observe any visible injuries. (Akarumeh Decl. at 2). Plaintiff contends that he had a swollen lip but no other visible

injuries. (Pltf. Dep. at 109-110). Plaintiff reports that, at some point thereafter, he told a different, unnamed nurse that he was having "back problems." (Pltf. Dep. at 91).

This litigation followed.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id*. (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress*

& Co., 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal

quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

## ANALYSIS

Plaintiff's claims proceed under 42 U.S.C. § 1983. That statute provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Plaintiff asserts four claims for relief by way of § 1983: (i) a search claim under the Fourth Amendment; (ii) a sexual abuse claim under the Eighth Amendment; (iii) a deliberate indifference claim under the Eighth Amendment; and (iv) an excessive force claim under the Eighth Amendment. (*See generally* Compl.). Defendants move for

summary judgment on the first, second, and third claims only. The Court addresses these claims for relief *seriatim*.

I.   Claim No. 1: The Search Claim (Fourth Amendment)

Plaintiff's first claim is grounded in the Fourth Amendment and is based on the manual body cavity search that Delovic performed. Although Plaintiff was subjected to a pat and frisk as well as a strip search prior to being brought into the disciplinary area, he appears to challenge only the manual body cavity search as unreasonable. (*See* Opp. Br. at 3). The Second Circuit, in distinguishing the varying levels of potentially intrusive searches, has explained that "[a] strip search, though an umbrella term[,] generally refers to an inspection of a naked individual, without any scrutiny of the subject's body cavities. A visual body cavity search extends to visual inspection of the anal and genital areas. A manual body cavity search includes some degree of touching or probing of body cavities." *Harris*, 818 F.3d at 58 (internal quotations omitted, alterations in original).

The Fourth Amendment prohibits only unreasonable searches. *Carroll v. United States*, 267 U.S. 132, 147 (1925). "There is a long-established principle that the routine, random strip searches of inmates, including body cavity inspections, do not violate the Fourth Amendment." *Vaughn v. Strickland*, Nos. 12-CV-02696, 12-CV-03335, 12-CV-02995, 12-CV-03333, 2013 WL 3481413, at *4 (S.D.N.Y. July 11, 2013) (internal quotation omitted). "Nevertheless, 'the Fourth Amendment still requires all searches conducted within a prison, including strip searches, to be reasonable.'" *Id*. (quoting *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012)).

The test of reasonableness under the Fourth Amendment requires a balancing of the need for the search against the invasion of personal rights that it entails. *Bell v. Wolfish*, 441 U.S. 520,

559 (1979). In that regard, "[a] detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Torres v. City of New York*, No. 17-CV-06604, 2019 WL 4784756, at *5 (S.D.N.Y. Sept. 30, 2019). Notwithstanding, "inmates retain a limited right to bodily privacy under the Fourth Amendment." *Harris*, 818 F.3d at 57 (noting that "maintenance of prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy"). "[I]f the inmate's Fourth Amendment claim challenges an isolated search [(such as the strip search on May 19)], courts typically apply the standard set forth in *Bell v. Wolfish*." *Id*. at 58 (internal citation omitted). The *Bell* four-factor test of reasonableness requires courts to consider: (1) the scope of the intrusion; (2) the manner in which the search was conducted; (3) the justification for commencing the search; and (4) the place in which the search was conducted. *Torres*, 2019 WL 4784756 at *5 (citing *Bell*, 441 U.S. at 559).

A.      The Scope of the Intrusion

As to the first *Bell* factor, the "scope of the intrusion varies with the type of search (i.e. strip search, visual-cavity search, or manual body-cavity search), and also varies depending on who searches whom, i.e., whether the search involved an officer of the same gender as the inmate." *Torres v. City of New York*, No. 17-CV-06604, 2019 WL 7602181, at *12 (S.D.N.Y. Aug. 14, 2019) *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019) (citing *Harris*, 818 F.3d at 58 (internal quotations omitted)). It is undisputed that the search Plaintiff challenges was a manual cavity search and that both Plaintiff and each of the Officer Defendants are male. However, "a manual body-cavity search . . . is the most invasive type of search used in the prison context." (*Id*.). "A manual body cavity search is not *per se* unreasonable, but the highly intrusive nature of the search, even if conducted by male correction officers [on a male inmate], weighs in favor of a

finding that the search was unreasonable." *Thomas v. Jacobs*, No. 19-CV-06554, 2022 WL 504787, at *9 (S.D.N.Y. Feb. 17, 2022) (internal quotations omitted). Thus, because the search conducted upon Plaintiff was of the most intrusive possible kind, the first *Bell* factor weighs against a finding of reasonableness. *See id*.

### B.    The Manner of the Search

As to the second *Bell* factor, "a search conducted in a professional manner is more likely to be reasonable than one that is not." *Harris*, 818 F.3d at 59-60. Here, Plaintiff testified that the Officer Defendants sprayed him with mace, tackled him to the ground, and kicked him before Delovic pulled Plaintiff's boxers down, spread his buttocks, and performed an anal cavity search. (Pltf. Dep. at 53, 62-63). Defendants only state that "[i]n his opposition, Plaintiff sets forth an account that differs from Defendants' account." (Reply at 3). The Court, for this exact reason, construes the facts in the light most favorable to the non-moving party and accepts Plaintiff's account as true for purposes of this motion.[6] The manner in which the search was conducted, according to Plaintiff's account, was not professional. *See, e.g. Harris*, 818 F.3d at 60 (a "violent and forceful" manner of search weighs against reasonableness); *Thomas*, 2022 WL 504787 at *9 (officers' decision to perform a manual cavity search to find drugs suspected to have been hidden in an inmate's rectum weighed against reasonableness under the second *Bell* factor where officers could have instead left the inmate in a dry cell to excrete the drugs or taken the inmate to medical personnel to perform the search); *Torres*, 2019 WL 7602181 at *12 (that defendants "restrained [p]laintiff . . . forced him to the ground, held him down, spread his legs, and forcibly removed the contraband from inside his body" weighed against reasonableness under the second *Bell* factor). Plaintiff's testimony suggests that the Officer Defendants performed the search in a manner

---

[6]  Even to the extent the Officer Defendants describe the manner of the search differently, Delovic admits that "force was used to gain [Plaintiff's] compliance." (Delovic. Decl. at ¶ 9).

indistinguishable from the search performed in *Torres*. The second *Bell* factor, therefore, weighs against a finding of reasonableness.

C.        The Justification for the Search

As to the third *Bell* factor, the Officer Defendants justify the search based upon their belief that Plaintiff had contraband in his possession, stemming from "noted signs of intoxication" and the smell of marijuana. (Def. Br. at 12). While these purported justifications may have supported the pat and frisk and the strip search, Plaintiff here challenges only the manual cavity portion of the search. The Officer Defendants must prove that each step of the search was reasonable, including the manual cavity search into which it "devolved." *Thomas*, 2022 WL 504787 at *8. The Officer Defendants argue, in support of taking this final step, that "Delovic recovered contraband that had been hidden on Plaintiff's person." (Def. Br. at 12). Delovic specifies that the contraband was found in the midst of the search that occurred in the "frisk area," i.e. after the shower strip search but before the anal cavity search. (Delovic Decl. at 2). Although the Officer Defendants point to no case for the proposition that finding some contraband on an inmate's person justifies a continuation of the search into that inmate's body cavities, the Court notes that in both *Thomas* and *Torres*, the purported justifications were similar. The officers in *Thomas* saw a piece of a balloon by the inmate and noticed the inmate walking in a way that indicated he had hidden something in his rectum. 2022 WL 504787 at *9. The officers in *Torres* found contraband hidden in the inmate's clothing and observed an object protruding from his anus. 2019 WL 7602182 at *13. Nevertheless, here, whether Plaintiff ever possessed drugs of any kind is disputed. Had Delovic found marijuana in Plaintiff's groin area, he *may* have then had justification to believe that Plaintiff hid additional contraband in his rectum. Plaintiff maintains that no drugs were found on his person on this date, that he does not and has never used drugs, and that the drug possession

charge against him was dismissed on appeal because the hearing officer concluded Plaintiff did not possess drugs on that occasion. (Opp. Br. at 2-3; Pltf. Dep. at 63, 138). Defendants, in their reply papers, remain silent on this aspect of the case. (*See generally* Reply). Without knowing whether any drugs were recovered from Plaintiff in the first place, the Court cannot determine as a matter of law that a manual cavity search was justified. *See Harris*, 818 F.3d at 61 ("[I]t is difficult, if not impossible, for courts to determine the reasonableness of a visual body cavity search without record evidence supporting the officer's justification for initiating the search."). In short, there is a genuine issue of material fact as to the Officer Defendants' justification for the manual cavity search.[7]

### D.     The Location of the Search

As to the fourth *Bell* factor, it is undisputed that the search occurred in the disciplinary area at Sing Sing. (Def. 56.1 at 2). The disciplinary area is a private area of the prison away from other inmates. (Def. Br. at 12). These circumstances weigh in favor of reasonableness under the fourth *Bell* factor. *See Thomas*, 2022 WL 504787 at *9 ("The search here was conducted in a private strip-frisk room . . . this does not strike the Court as excessive or unnecessary, and weighs in favor of reasonableness.").

In light of material factual disputes as to the third *Bell* factor, Defendants' motion for summary judgment on the Fourth Amendment claim is denied.

---

[7] The third *Bell* factor is potentially dispositive in the analysis where, as here, the first two factors weigh against reasonableness and the fourth factor, as discussed *infra*, weighs in favor of reasonableness. *See Thomas*, 2022 WL 504787 at *9 (finding that "it is a close question whether this search was reasonable and thus in line with the Fourth Amendment" where the first two *Bell* factors weigh against reasonableness but the third and fourth factor weigh in favor).

II.   Claim No. 2: The Sexual Abuse Claim (Eighth Amendment)

Plaintiff's sexual abuse claim is also based on the manual body cavity search performed by Delovic. This claim for relief is governed by the Eighth Amendment because Plaintiff was, at the time of the search, a convicted prisoner. "Under the Eighth Amendment, conditions of confinement 'must not involve the wanton and unnecessary infliction of pain.'" *Vann v. Griffin*, No. 16-CV-09903, 2018 WL 6199860 at *6 (S.D.N.Y. Nov. 28, 2018) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). "[S]exual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997). Moreover, the violation must be (i) objectively serious, and (ii) committed by a defendant with subjective culpability. *See e.g., Castro-Sanchez v. N.Y.S. Dep't of Corr. Servs*., No. 10-CV-08314, 2012 WL 4474154, at *2-3 (S.D.N.Y. Sept. 28, 2012).

The Officer Defendants move for summary judgment on this claim "because the undisputed facts indicate that . . . Delovic had a legitimate penological purpose in the alleged search." (Def. Br. at 7). However, as described *supra*, there is a genuine dispute of material fact as to the penological purpose of the alleged search. Defendants state in reply that "Plaintiff argues that there was no penological justification for the cavity search, but does concede that marijuana, despite his having concealed it, was recovered from his person, which he later admitted at a prison disciplinary hearing." (Reply at 6). Plaintiff makes no such concession. Plaintiff's opposition brief states, in the clearest possible terms, that "Plaintiff did not have any contraband, even though he pled guilty to the drug possession at the disciplinary hearing." (Opp. Br. at 2). Plaintiff cites to the dismissal of his drug charge on appeal in support of this assertion. (*Id*. at 24). Moreover, Plaintiff's denial of having drugs on him at the time of the search is entirely consistent with his deposition

testimony. (Pltf. Dep at 63, 138). Whether Plaintiff had contraband on him is material to Defendants' purported penological purpose for the manual cavity search. *See Thomas*, 2022 WL 504787 at *12 (dismissing sexual assault claim because the "initiation of the search was justifiable, and it was limited to the area where contraband was reasonably expected to be"); *Torres*, 2019 WL 7602181 at *10 (dismissing sexual assault claim because "[p]laintiff does not dispute that [the defendant's] manual search for contraband was based on a reasonable belief that [p]laintiff has secreted contraband in a body cavity"). Defendants again remain silent on this critical issue.

The Officer Defendants' motion for summary judgment, as to the sexual abuse claim is, accordingly, denied.

## III.    Claim No. 3: The Deliberate Indifference Claim (Eighth Amendment)

Plaintiff's third claim for relief is that Akarumeh was deliberately indifferent to his serious medical needs. Akarumeh moves for summary judgment on this claim both because Plaintiff's injuries were not constitutionally serious and because her conduct was not sufficiently culpable.[8]

Even if Plaintiff did not abandon his claim here, "[i]n order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (alteration in original)). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by

---

[8] Plaintiff declined to respond to Akarumeh's arguments on the medical indifference claim. The Court will, therefore, consider the claim for relief abandoned. *See Murtha v. New York State Gaming Comm'n.*, No. 17-CV-10040, 2022 WL 784756, at *7 n.7 (S.D.N.Y. Mar. 15, 2022) (concluding that the plaintiff waived objection by failing to raise it in his opposition brief); *Leach v. King*, No. 16-CV-00861, 2018 WL 1514243, at *4 n.1 (D. Conn. Mar. 27, 2018) ("[B]ecause [the *pro se* plaintiff] has not addressed the merits of the arguments seeking dismissal of his claims for injunctive and declaratory relief, I can consider these claims abandoned"); *Harnage v. Faneuff*, No. 15-CV-01033, 2017 WL 6629297, at *8 n.3 (D. Conn. Nov. 29, 2017) ("As the [*pro se*] plaintiff has not addressed the merits of any retaliation claim based on the rejection of his grievances without disposition, the court also could have considered that claim abandoned"); *In re UBS AG Secs. Litig.*, No. 07-CV-11225, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 18, 2012) (recognizing that a party "concedes through silence" arguments by its opponent that it fails to address).

satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4

(S.D.N.Y. Sept. 8, 2020).

> The first prong is objective and requires that the alleged deprivation
> in medical care be sufficiently serious. A deprivation in medical care
> is sufficiently serious if (1) the prisoner was actually deprived of
> adequate medical care and (2) the inadequacy in medical care is
> sufficiently serious. The latter inquiry contemplates a condition of
> urgency that may result in degeneration or extreme pain.
> . . . .
>
> The second prong of the deliberate indifference test under the Eighth
> Amendment is subjective and requires that the plaintiff demonstrate
> that the defendant had a sufficiently culpable state of mind. A
> defendant had a sufficiently culpable state of mind if he acted or
> failed to act while actually aware of a substantial risk that serious
> inmate harm will result.

*Id*. at *4-5 (internal citations and quotation marks omitted). There is no factual dispute here as to

either prong and, on the undisputed facts, Akarumeh is entitled to judgment on this claim for relief

as a matter of law.

### A.       The Objective Prong

Plaintiff testified that his injuries consisted of a swollen lip, back pain, and shoulder pain.

(Pltf. Dep. at 61, 91, 109). These injuries, as a matter of law, are not—without more—of a vintage

that "might have produced death, degeneration, or extreme pain." *Vasquez v. Cty. of Rockland*,

No. 13-CV-05632, 2020 WL 883514, at *13 (S.D.N.Y. Feb. 24, 2020) (internal quotation marks

omitted); *see, e.g.*, *Brown v. Annucci*, No, 19-CV-09048, 2021 WL 860189, at *5 (S.D.N.Y. Mar.

8, 2021) ("District courts in the Second Circuit have consistently held that bruises, lacerations,

cuts, black eyes, and other superficial injuries are not sufficiently serious to support a deliberate

indifference claim." (quoting *Morehouse v. Vasquez*, No. 17-CV-04836, 2020 WL 1049943, at

*18 (S.D.N.Y. May 4, 2020)); *Sledge v. Bernstein*, No. 11-CV-07450, 2012 WL 4761582, at *5

(S.D.N.Y. Aug. 2, 2012) ("[C]ourts in this district have held that terrible and extreme headaches

and swelling do not satisfy the objective component of an Eighth Amendment claim."); *see also Adams v. Annucci*, No. 17-CV-03794, 2020 WL 1489787, at *12 (S.D.N.Y. Mar. 27, 2020) (dismissing claim for deliberate indifference to a serious medical need because "although Plaintiff alleges that he has suffered from headaches, backaches, stomach pains, sleeplessness, stress, and anxiety, such ailments, without more, fail to satisfy the objective requirement" (internal citations omitted)). However, even if the injuries Plaintiff identified were sufficiently serious, there is no basis to conclude that the care Akarumeh provided was inadequate. Plaintiff never informed Akarumeh of his shoulder or back pain. (Pltf. Dep. at 69). Moreover, even if Plaintiff's swollen lip was visible, Akarumeh rendered treatment by washing his face. (*Id*.). To the extent Plaintiff argues Akarumeh should have treated his lip in a different way, disagreement over treatment cannot be the basis for a claim under the Eight Amendment. *See Chance*, 143 F.3d at 703 ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

### B.     The Subjective Prong

Even if Plaintiff had established that he suffered a sufficiently serious deprivation of medical care in Akarumeh's charge, there is no evidence to suggest that Akarumeh was deliberately indifferent so as to create a substantial risk of serious harm to Plaintiff. The subjective prong requires that Plaintiff prove "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed." *Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020) (quoting *Darnell*, 849 F.3d at 35). According to the record, Akarumeh "took Plaintiff's vital signs, which were within normal limits" and "Plaintiff denied any injuries." (Akarumeh Decl. ¶¶ 7-8). Based on his findings, Akarumeh "did not believe that any further medical treatment was warranted or that any follow up

was necessary." (*Id*. ¶ 10). Nothing in the record suggests that Akarumeh was aware of—let alone disregarded—a serious medical need. *See, e.g., Abreu v. Farley*, No. 11-CV-06251, 2019 WL 1230778, at *12 (W.D.N.Y. Mar. 15, 2019) (granting summary judgment on Eighth Amendment deliberate indifference claim where "medical progress notes wholly undermine[d] Plaintiff's contention that he suffered a sufficiently serious" injury that was disregarded); *Mena v. City of New York*, No. 13-CV-02792, 2018 WL 4328827, at *7 (E.D.N.Y. Sept. 11, 2018) (granting summary judgment where x-ray "show[ed] no remarkable results" (internal quotation marks omitted)); *see also Riley v. Roycroft*, No. 16-CV-02227, 2017 WL 782917, at *7 (S.D.N.Y. Feb. 28, 2017) (dismissing Eighth Amendment deliberate indifference claim where medical notes reflected subjective conclusion that, despite plaintiff's requests, a brace was unnecessary).

In light of the evidence produced and the lack of a genuine issue of material fact with respect to the issues outlined above, Defendant's motion for summary judgment on the deliberate indifference claim is granted and Plaintiff's deliberate indifference claim against him is dismissed with prejudice.

## IV.   Qualified Immunity Defense

The Officer Defendants move, in the alternative, for summary judgment on the affirmative defense of qualified immunity as to the claims at issue on this motion. [9] (Def. Br. at 17). The affirmative defense of "[q]ualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (quoting *McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016) ). "A Government official's conduct violates clearly

---

[9] Given the conclusions reached *supra* as to Plaintiff's claim against Akarumeh, the Court need not and does not reach the issue of whether Akarumeh is entitled to qualified immunity.

established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013) (internal quotation marks omitted).

The Officer Defendants cite *Torres* in support of their argument that the law was not clearly established that their search of Plaintiff was unreasonable under the Fourth Amendment. (Def. Br. at 19). Specifically, they rely upon the following: "[T]he Court is not aware of, any case law providing that correction officers *who have a legitimate penological justification* for conducting a body-cavity search of an inmate for suspected contraband . . . are then constitutionally prohibited from using force to remove an object observed to be protruding from the inmate's anus." (*Id.* (quoting *Torres*, 2019 WL 7602181, at *9 (emphasis added)). The Officer Defendants argue that "it was reasonable . . . to believe that the search was justified based on their legitimate suspicion that Plaintiff had hidden contraband drugs upon his person." (*Id.* at 18). However, as discussed *supra*, there is a genuine issue of fact as to this justification. The Court thus cannot determine as a matter of law on this record whether the Officer Defendants are entitled to qualified immunity on the Fourth Amendment claim. *See Zwick v. Town of Cheektowaga*, No. 17-CV-00727, 2021 WL 4895106, at *6 n.7 (W.D.N.Y. Oct. 20, 2021) ("[G]iven the existence of a genuine issue of material fact, the Court will not address the viability of any qualified-immunity defense." (citing *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)); *Betts v. Rodriquez*, No. 15-CV-03836, 2017 WL 2124443, at *5 (S.D.N.Y. May 15, 2017); *Tatum v. City of New York*, No. 06-CV-04290, 2009 WL 124881, at

*11 (S.D.N.Y. Jan. 20, 2009) ("Dismissal on the basis of a qualified immunity defense is inappropriate where there are facts in dispute that are material to a determination of reasonableness.").

The Officer Defendants' qualified immunity defense fails at this stage on the Eighth Amendment sexual abuse claim for the same reason. Because there exists a genuine dispute of material fact as to the penological purpose for the search, the Court is unable to determine as a matter of law whether the Officer Defendants are entitled to qualified immunity.

The Officer Defendants' motion for summary judgment on the affirmative defense of qualified immunity is, accordingly, denied.

## **CONCLUSION**

In light of the foregoing, Defendants' motion for partial summary judgment is GRANTED IN PART. Plaintiff's first and second claims for relief against the Officer Defendants for unreasonable search and sexual abuse, respectively, shall—along with the fourth claim for relief concerning excessive force—proceed to trial. Plaintiff's third claim for relief for deliberate indifference against Akarumeh is dismissed.

A pretrial conference has been scheduled for August 16, 2022 at 2:30 p.m. At the time of the conference, all parties shall call: (888) 398-2342; access code: 3456831. Defense counsel is reminded that it is their responsibility to ensure Plaintiff's appearance on that date.

The parties shall file, by August 2, 2022, a Proposed Joint Pretrial Order in accordance with Rule 6(A) of the Court's Individual Practices.

The Clerk of the Court is respectfully directed to: (i) terminate the motion sequence pending at Doc. 86; (ii) terminate Akarumeh as a Defendant in this action; and (iii) mail a copy of this Memorandum Opinion and Order to Plaintiff.

**SO ORDERED**:

Dated: White Plains, New York
       June 29, 2022

_____
Philip M. Halpern
United States District Judge